IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No.  13-cv-00796-RPM

MICHAEL DAY KEENEY,

     Plaintiff,

v.

AUTO-OWNERS INSURANCE COMPANY,

     Defendant.

---

ORDER FOR SUMMARY JUDGMENT

---

Plaintiff Michael Day Keeney ("Keeney" or "the Plaintiff") alleges four claims for relief against Auto-Owners Insurance Company ("Auto-Owners" or "the Defendant"):  (1) a claim for uninsured motorist ("UM") benefits; (2) breach of contract; (3) bad faith breach of insurance contract, and (4) unreasonable delay/denial of payment of insurance benefits in violation of C.R.S. §§ 10-3-1115(1) & 10-3-1116(1).

The Defendant's motion for summary judgment is now before the court.  Arguments of counsel were heard on February 12, 2013.

The following facts are undisputed, except where otherwise stated.

In 2010, Keeney owned and operated a motorcycle repair business known as Hogley, Inc. ("Hogley").  On August 5, 2010, Keeney was test driving a 1998 Harley Davidson motorcycle owned by a Hogley customer, Barry Sroloff ("Sroloff").  Keeney was stopped at a red light at an intersection in Denver, Colorado, when he was struck from behind by a 2000 Jeep Grand

-1-

Cherokee driven by Kate Richards ("Richards"). The impact caused Keeney to be thrown from the motorcycle. He was transported by ambulance to Denver Health Medical Center, where he received treatment for injuries.

Since the accident, Keeney has received medical treatment for neck and back pain, headaches, dizziness, confusion, sleep problems, and other complaints. Keeney claims that he has suffered permanent physical impairment from the accident and that such injuries have impaired his earning capacity and enjoyment of life.

Richards was the at-fault driver. She was uninsured.

The motorcycle was insured under an automobile insurance policy issued by State Farm to Sroloff ("the State Farm Policy"). The State Farm Policy included UM coverage with limits of $200,000.

Keeney was also an insured under a Garage Liability Policy issued by Auto-Owners to Hogley. (Def.'s Ex. 3). The coverage provided under the Auto-Owners Policy includes UM benefits with limits of $750,000.

The Auto-Owners Policy contains the following exclusion:

> **3. EXCLUSIONS**
> Uninsured Motorist Coverage does not apply:
> \*\*\*
> e. To **bodily injury** sustained while the injured person is operating or **occupying** an **auto** without a reasonable belief that he or she is entitled to do so, provided that under no circumstances will an injured person whose drivers license has been suspended, revoked or never issued, be held to have a reasonable belief that he or she is entitled to operate an auto.

(Def.'s Ex. 3C, Auto-Owners Policy, Colorado UM Coverage Form 89822 at AO 824-25 (bold in the original)).

The Auto-Owners policy also contains a cooperation provision which states:

**Section VI – WHAT YOU MUST DO AFTER AN ACCIDENT, OCCURRENCE OR LOSS**

\*\*\*

**You** and any person seeking coverage under this policy must cooperate with us in the investigation, settlement or defense of any claim or **suit** ... **You** must give **us** access to any documents we request.

(Def.'s Ex. 3C, Auto-Owners Policy at AO 798-99 (bold in the original)).

In a letter dated September 14, 2010, Keeney's counsel (Todd F. Bovo) informed Auto-Owners that he represented Keeney in connection with the August 5, 2010 collision. That letter stated, "Medical information and expenses are currently being collected and will be provided to you with a demand at the appropriate juncture. Any medical or wage authorization provided to you by our client prior to our representation is hereby revoked...." (Def.'s Ex. 11).

Over two years later, in a letter to Auto-Owners dated October 8, 2012, Bovo demanded payment of uninsured/underinsured benefits under the Auto-Owners Policy. In a separate letter to State Farm, Bovo demanded payment of uninsured/underinsured benefits under the State Farm Policy.[1]

Auto-Owners responded on October 25, 2012, informing Bovo that the State Farm Policy was primary and that coverage under the Auto-Owners Policy was excess and would not be triggered until coverage under the State Farm Policy had been exhausted.

State Farm determined that its policy was primary with respect to uninsured/underinsured motorist benefits. In November 2012, Keeney reached a policy limits settlement with State Farm. (Pl.'s Ex. 1, Keeney Aff. ¶ 6). On November 28, 2012, Auto-Owners received notice

---

[1] The demand letters to State Farm and Auto-Owners are not in the court record.

from State Farm that it had settled Keeney's claim by paying the UM limits of the State Farm Policy.

On January 30 and 31, 2013, Geoffrey Page, an Auto-Owners claims representative, sent letters to Bovo, requesting certain documents, including pre- and post-accident medical records and tax and employment records pertinent to Keeney's claim of lost wages. (Def.'s Ex. 2 (Page aff.) & Def.'s Ex. 10). Auto-Owners states that the requested information was not provided.

Auto-Owners had no ability to obtain such information without Keeney's cooperation in light of Bovo's letter to Auto-Owners dated September 14, 2010.

Auto-Owners made three more written requests for information on March 1, 19, and 28, 2013. (Def.'s Exs. 2 & 10). In those communications, Page informed Bovo that Auto-Owners needed the additional information before it could make an offer of settlement. The requested documents were not provided.

At the hearing on the Defendant's motion, Bovo stated that when Auto-Owners made those requests in January and March 2013, he had already provided Auto-Owners with sufficient information for it to evaluate the claim. Bovo did not provide any evidence in support of that statement.

On March 28, 2013, Bovo filed this action on the Plaintiff's behalf, seeking payment of UM benefits and damages for breach of contract, bad faith breach of insurance contract, and unreasonable delay/denial of payment of insurance benefits in violation of C.R.S. §§ 10-3-1115(1) & 10-3-1116(1).

Auto-Owners answered the complaint and denied liability. A scheduling conference was held on June 19, 2013.

At that time, Auto-Owners was continuing to investigate the Plaintiff's UM claim. In late June 2013, Auto-Owners obtained a copy of the Plaintiff's motor vehicle records from the Colorado Department of Motor Vehicles ("DMV"). (Def.'s Ex. 6). Those records showed that the Plaintiff's driver's license had been suspended on July 14, 2010, and was not reinstated until October 13, 2010. That is, the DMV records showed that the Plaintiff did not have a valid driver's license on the date of the accident. The apparent reason for the suspension was that the Plaintiff had received a traffic citation and had failed to pay the fine.

In a letter to Bovo dated July 19, 2013, Auto-Owners stated that if the Plaintiff's driver's license was suspended on the date of the loss, the exclusion stated in paragraph 3.e of the UM Coverage Form 89822 ("the ¶ 3.e exclusion") would provide a basis for denying his claim. (Def.'s Ex. 7). Auto-Owners requested clarification about the Plaintiff's position on that issue. Auto-Owners also repeated its request that the Plaintiff provide medical records and other information.

On August 23, 2013, Auto-Owners again wrote to Bovo, describing the coverage issue created by the suspension of Keeney's license and again stating that it could not move forward with settlement discussions until the Plaintiff responded to Auto-Owners' requests for medical records and other documents. (Def.'s Ex. 8).

In a letter to Bovo dated October 3, 2013, Auto-Owners informed the Plaintiff that his claim was denied. (Def.'s Ex. 9). The denial letter stated, "because our records state that [Keeney] did not have a valid driver's license when this accident occurred on August 5, 2010, we have no choice but to deny your claim." (*Id.*). Auto-Owner's letter also quoted the policy's

cooperation provision and stated "because you have failed to provide responses to our previous inquiry, we have not been able to fully evaluate Mr. Keeney's claim." (*Id.*).

Auto-Owners argues that the Plaintiff's claims for UM benefits and breach of contract fail because coverage for UM benefits is excluded by the ¶3.e exclusion. There is no dispute that the DMV records show that the Plaintiff's license was suspended on the date of the accident. (Def.'s Ex. 6).

In response, the Plaintiff provided his own affidavit, acknowledging that he had received a traffic citation and stating that he believed the fine had been paid in full. (Pl.'s Ex. 1, Keeney Aff. ¶ 12). The Plaintiff contends his affidavit shows he had a reasonable belief that he was entitled to operate a motor vehicle on the date of the accident. At the hearing, Bovo suggested that the DMV had erred by failing to reinstate the Plaintiff's license before the date of the accident, but did not provide any supporting evidence.

The Plaintiff's response is not sufficient to avoid summary judgment. The Plaintiff's subjective understanding about his license is irrelevant because the plain language of the exclusion provides that UM benefits are not available to an injured person who was driving without a valid driver's license. The Plaintiff's affidavit does not create a triable issue of fact, and he has not submitted any other evidence that would create a genuine factual dispute about the status of license on the date of the accident.

The Plaintiff argues that he is entitled to benefits because on the date of the accident he had a reasonable belief that he was insured. He states that Auto-Owners never notified him that his insurance coverage had been canceled or suspended.

The Plaintiff's belief about his insurance coverage is irrelevant and incorrect. The denial of one category of benefits by application of a policy exclusion is not a cancellation of the entire policy. No evidence indicates that Auto-Owners canceled or suspended the Plaintiff's Policy.

The Plaintiff's response suggests that the exclusion should not be applied because Auto-Owners failed to assert it earlier. That argument, whether characterized as estoppel or waiver, misses the mark. The general rule is that the doctrines of waiver and estoppel cannot create coverage where none exists under the policy. *See Management Specialists, Inc. v. Northfield Ins. Co.*, 117 P.3d 32, 37 (Colo. Ct. App. 2004) (citing *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606 (Colo.1999); *Empire Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 764 P.2d 1191, 1198 (Colo.1988)). The Plaintiff has not submitted any evidence or legal authority that would support a different conclusion.

The Plaintiff's statutory insurance bad faith claim fails for lack of evidence, as does his common law bad faith claim. Section 10-3-1115(1), C.R.S. provides, "A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Section 1116(1), C.R.S. provides that a "first-party claimant ... whose claim for payment of benefits has been unreasonably delayed or denied" may bring an action to recover "reasonable attorney fees and court costs and two times the covered benefit." Section 1115(2) provides that "an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action."

The Plaintiff has not come forth with any evidence showing that Auto-Owners acted unreasonably with respect to the Plaintiff's UM claim. The Plaintiff merely points out that the

accident occurred on August 5, 2010 and Auto-Owners denied the claim over three years later, on October 3, 2013. The Plaintiff contends that delay of over three years shows Auto-Owners' conduct was unreasonable. The Plaintiff asserts that Auto-Owners should have informed the Plaintiff at an earlier date of its coverage determination and failed to do so because Auto-Owners did not undertake a timely investigation.

The Plaintiff's argument ignores the evidence in the record. Auto-Owners cannot be faulted for failing to fully investigate the claim before it received Keeney's demand in October, 2012. The Plaintiff does not dispute that Auto-Owners responded to his demand on October 25, 2012, and informed him that the State Farm Policy was primary. In fact, State Farm determined that its policy was primary, and nothing in the record suggests any error in that determination. Thus, Auto-Owners' insurance obligation, if any, is an excess obligation that was triggered only after the Plaintiff had recovered the UM benefits available under the State Farm Policy in November 2012.

Auto-Owners states that November 28, 2012 was the date when it learned that State Farm and Keeney had agreed to a policy limits settlement. The record evidence shows that by January 30, 2013, Page was communicating with Plaintiff's counsel about Keeney's claim.

The Plaintiff has not provided any evidence to justify his lack of response to Auto-Owner's requests for information about his medical history and earnings. At the hearing, Bovo suggested only that no response was necessary because Auto-Owners already had received sufficient information to evaluate the claim. As stated above, the Plaintiff did not provide evidentiary support for that statement. Arguments of counsel are not evidence.

The evidence in the record shows that Auto-Owners was attempting to investigate and evaluate the Plaintiff's UM claim when the Plaintiff filed this action on March 28, 2013. The record also shows that Auto-Owners denied the claim only after the Plaintiff failed to respond to Auto-Owners' repeated efforts to obtain information and documents and after Auto-Owners discovered that the Plaintiff had been driving while suspended. The date of Auto-Owners' denial letter (October 3, 2013) is not evidence of unreasonable delay. The Plaintiff's evidence is insufficient to create a triable issue on that question.

Auto-Owners argues that the Plaintiff materially breached the contract by failing to cooperate with Auto-Owners' investigation of the Plaintiff's claim and that such breach precludes him from enforcing the contract and is fatal to his claim of breach of the implied duty of good faith and fair dealing. That argument does not need to be addressed because the Plaintiff's claims fail for the reasons stated above.

Based on the foregoing, it is

ORDERED that the Defendant's motion for summary judgment [#16] is granted.

Date: February 18, 2014

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge